**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN NOVAK, on behalf of himself and all others similarly situated, | ) | |
| Plaintiff, | ) | No. 26 C 1849 |
| v. | ) | Judge Sara L. Ellis |
| BENEFITS MANAGEMENT GROUP, INC., | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Jonathan Novak had his personal identifiable information ("PII") compromised when his pension plan provider, Defendant Benefits Management Group, Inc. ("BMGI"), suffered a data breach. After learning of the data breach, Novak filed this putative class action against BMGI, bringing negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, Illinois consumer fraud, and declaratory judgment claims. BMGI has moved to dismiss the breach of implied contract, unjust enrichment, and declaratory judgment claims under Federal Rule of Civil Procedure 12(b)(6). Because Novak has sufficiently alleged the existence of an implied contract, the Court allows his breach of implied contract claim to survive. But because Novak has failed to allege that BMGI retained any benefit to Novak's detriment, the Court dismisses his unjust enrichment claim without prejudice. And although his declaratory judgment claim cannot proceed as a standalone claim, the Court allows Novak to pursue the relief he seeks therein.

## BACKGROUND[1]

BMGI provides health and welfare, retirement plan, trust administration, financial accounting administration, contribution accounting, and eligibility management services. As part of providing these benefits, BMGI receives and maintains their customers' PII and personal health information ("PHI"). BMGI manages Novak's pension plan; thus, Novak provided BMGI with his PII.

On November 26, 2024, BMGI learned of potential unauthorized access to certain BMGI computer systems and began an investigation to determine the nature and scope of the activity. BMGI's investigation discovered that an unauthorized actor had copied certain files on BMGI's computer systems between October 24, 2024 and December 2, 2024. As a result, the unauthorized actor accessed certain customers' names, Social Security numbers, addresses, dates of birth, driver's licenses or state identification numbers, pension application information, financial account information, and health insurance information.

BMGI started notifying its members of the data breach on July 18, 2025, acknowledging that it "created a present, continuing, and significant risk of identity theft." Doc. 1 ¶ 25. BMGI encouraged its members "to remain vigilant against incidents of identity theft and fraud" and "[review their] account statements and monitor[ ] [their] free credit reports and explanation of benefits for suspicious activity and to detect errors." *Id.* BMGI offered some victims of the data breach credit monitoring and identity related services.

Because BMGI had Novak's PII, the data breach compromised his PII, which "has already been published—or will be published imminently—by cybercriminals on the Dark Web." *Id.* ¶ 40. Novak noticed fraudulent charges on his financial accounts and "had to file a

[1] The Court takes the facts in the background section from the complaint and the exhibit attached thereto and presumes them to be true for the purpose of resolving BMGI's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

police report to document and attempt to resolve the financial fraud." *Id.* ¶ 42. Further, an unauthorized party opened a CitiBank account in Novak's name using his home address. Resultingly, Novak is no longer able to open any new bank accounts or lines of credit. An unauthorized party also attempted to file taxes in Novak's name, and now Novak can no longer file his taxes online and must instead mail his tax return information. Novak has spent time and effort monitoring his accounts to protect himself from identity theft, as instructed by BMGI. Finally, Novak has suffered from an uptick in spam and scam emails, text messages, and calls, anxiety, sleep disruption, stress, fear, and frustration. Novak considers himself to be at an increased risk of fraud and identity theft and anticipates spending considerable amounts of time and money to mitigate this risk. He believes the value of his PII has diminished as a result of the data breach.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS[2]

### I. Breach of Implied Contract (Count II)

First, BMGI argues that the Court should dismiss Novak's breach of implied contract claim because Novak has not alleged the requisite elements. "To sustain a complaint for breach of implied contract, a plaintiff must allege that (1) a contract existed, (2) the plaintiff performed his obligations under that contract, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of that breach." *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶ 59 (citing *In re Estate of Khan*, 2021 IL App (1st) 200278, ¶ 28). Parties can create an implied contract based on their actions, even if no express contract exists between them. *Id.* (citing *Trapani Constr. Co. v. The Elliot Grp., Inc.*, 2016 IL App (1st) 143734, ¶ 41). Illinois law acknowledges that "a contract in fact can be implied from the facts and circumstances that demonstrate the parties' intent to be bound." *Id.* (citing *Heavey v. Ehret*, 166 Ill. App. 3d 347, 354 (1988)).

BMGI contends that Novak fails to allege the first element—existence of an implied contract—because he "does not plead the existence of an offer or consideration." Doc. 26 at 5. Novak alleges that he reasonably understood that BMGI would use adequate security measures to protect his PII based on BMGI's duties under state and federal law and the company's internal policies, pointing to a BMGI privacy policy. *See* Doc. 1 ¶ 18 (citing BMGI's "SMS Privacy

---

[2] Novak generally asserts that the Court should permit all of his claims to proceed because (1) "it is undisputed that [his] complaint states claims for relief that are supported by viable legal theories," (2) "[he] was not required to plead legal theories in the first place," and (3) "it would be premature to scrutinize [his] alternative legal theories at the pleading stage." Doc. 29 at 9–10. Yet Courts commonly analyze the plausibility of individual claims at the motion to dismiss stage. *See In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 587 (N.D. Ill. 2022) (noting that although defendants argue that plaintiffs' failure to allege cognizable damages warrants dismissal of ten distinct claims, the court's research "revealed that the pleading requirements for each claim can differ," and so the court "walk[ed] through each claim one by one"). While Novak's *theory* that BMGI failed to safeguard his PII may underscore all his claims, the Court must nonetheless analyze the different pleading requirements for each claim.

Policy & Notice of Privacy Practices," which states, under the "HIPAA & Data Security" heading, "[w]e implement administrative, technical, and physical safeguards to protect your [electronic] PHI"). BMGI notes that this policy's text expressly limits the policy to how BMGI "collects and handles . . . information when [customers] communicate with [BMGI] *via SMS*." *See* Doc. 1 ¶ 18 n.4 (emphasis added) (referencing *SMS Privacy Policy & Notice of Privacy Practices*, Benefits Management Group, Inc., https://home.bmgiweb.com/sms-privacy-policy-notice-of-privacy-practices/). Although BMGI is correct that this privacy policy "does not precisely address the collection of data in the context" in which Novak provided his PII to BMGI, "the existence of a [p]rivacy [p]olicy . . . demonstrates [BMGI]'s commitment to protecting personal information generally, and it is one of the circumstances that might support an inference of 'an implicit promise to protect employees' personal information in exchange for their employment.'" *In re Mondelez Data Breach Litig.*, No. 23 C 3999, 2024 WL 2817489, at *7 (N.D. Ill. June 3, 2024) (quoting *Gallagher*, 631 F. Supp. 3d at 591).

Further, Novak alleges that he provided his PII to BMGI as a condition of BMGI managing his pension plan. Doc. 1 ¶ 36. Because BMGI required Novak to provide it with his PII to receive services, he could reasonably expect that BMGI "in turn, would keep this information private and protect it from unauthorized disclosures." *Wittmeyer v. Heartland All. for Hum. Needs & Rts.*, No. 23 CV 1108, 2024 WL 182211, at *5 (N.D. Ill. Jan. 17, 2024); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 33 ("On top of defendant's representations in its privacy policy, it is implied from the relationship between the parties that defendant would take reasonable steps to ensure that plaintiffs' personal information would be protected from unauthorized disclosure."); *see also Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) ("While [the defendant] may not have explicitly promised to protect [personal

information] from hackers in Plaintiffs' employment contracts, it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." (internal quotation marks omitted)). The Court, therefore, allows Novak's breach of implied contract claim to move past this early motion to dismiss stage, although Novak will need to further develop this claim in discovery. *See Mondelez*, 2024 WL 2817489, at *7 (allowing breach of implied contract claim to survive motion to dismiss stage because the plaintiffs' allegations, "considered in context, amount to more than naked assertions . . . and they suffice to state a plausible claim for relief" (citation omitted) (internal quotation marks omitted)).

**II. Unjust Enrichment (Count III)**

Second, BMGI moves to dismiss Novak's unjust enrichment claim. "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores*, 2023 IL App (1st) 230140, ¶ 37 (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill. 2d 145, 160 (1989)).

BMGI argues that the Court should dismiss Novak's unjust enrichment claim because he fails to allege that BMGI received any benefit to Novak's detriment. In his complaint, Novak alleges that BMGI benefitted from "(1) using [his] PII[] to provide services, and (2) accepting payment." Doc. 1 ¶ 151. Novak also alleges that BMGI enriched itself by "saving the costs [it] reasonably should have expended on data security measures." *Id.* ¶ 154. But the Court does not find these allegations persuasive. First, Novak alleges that he transferred his sensitive data to

BMGI as part of an implied contract in exchange for BMGI's pension management services, and "[t]ransferring sensitive data as part of a contract—either implied or express—does not confer an additional benefit but instead satisfies a necessary and incidental act to that contract." *Bernardino v. HAH Grp. Holding, LLC*, No. 24-CV-7595, 2026 WL 1398722, at *9 (N.D. Ill. May 19, 2026). And although Novak alleges that he "reasonably understood that a portion of the funds paid to [BMGI] would be used to pay for adequate cybersecurity and protection of PII," Doc. 1 ¶ 38, Novak does not allege that he paid anything separately and specifically for data security, *In re Lurie Child.'s Hosp. Data Sec. Litig.*, No. 24-CV-05503, 2025 WL 2754760, at *12 (N.D. Ill. Sept. 27, 2025) (dismissing plaintiffs' unjust enrichment claim because "[a]ny monetary benefit that Plaintiffs (or their insurers) conferred upon Lurie was for healthcare services, and the CAC does not claim that there was any separate outlay for data security"); *see also McCullar v. UCM Med. Grp. Sub, LLC*, No. 25 C 6462, 2026 WL 2409623, at *5 (N.D. Ill. Aug. 18, 2026) ("Any monetary benefit that McCullar conferred upon UCM was for healthcare services, and [ ] McCullar does not allege that there was any separate outlay for data security."). The Court thus dismisses Novak's unjust enrichment claim.

**III. Declaratory Judgment (Count VI)**

Finally, Novak requests a declaratory judgment and injunction to address BMGI's duties to use reasonable data security to safeguard the PII it collects. BMGI first argues that the Court should dismiss this claim because declaratory judgment and injunctions are not cognizable claims but rather types of relief. *See Nazzaro v. Tecta Am. Corp.*, No. 25 C 448, 2025 WL 2604790, at *7 (N.D. Ill. Sept. 9, 2025) (dismissing a standalone claim for declaratory judgment). BMGI "is correct that [Novak]'s independent claim for a declaratory judgment claim is improper." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021). But

courts nonetheless allow plaintiffs to seek declaratory relief, even if they dismiss their declaratory judgment claims. *Id.* at 1004–05.

BMGI also argues that even if the Court were to treat Novak's declaratory judgment claim as only a request for relief, Novak lacks standing to pursue such relief. To establish standing to seek declaratory or injunctive relief, Novak must allege (1) "an actual or imminent threat of suffering a concrete and particularized 'injury in fact,'" which (2) Novak can fairly trace to BMGI's conduct and that (3) a favorable judicial decision will likely prevent or redress. *Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019). Novak "must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 95–96.

In data breach cases, the Seventh Circuit has found that the increased risk of identity theft constitutes a sufficiently imminent future injury. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692–94 (7th Cir. 2015) (increased risk of identity theft was not a mere "allegation[ ] of possible future injury" but a "certainly impending" future harm given that the data breach had already occurred (citation omitted)); *see also Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966–67 (7th Cir. 2016) (finding "the increased risk of fraudulent charged and identity theft [that plaintiffs] face because their data has already been stolen" to be "concrete enough to support a lawsuit"). At this stage, the Court must accept Novak's allegation that BMGI's data breach exposed his PII. Novak therefore has sufficiently alleged an imminent injury allowing him to pursue declaratory and injunctive relief. *Bernardino*, 2026 WL 1398722, at *4. To the

extent that discovery reveals that the data breach did not expose Novak's PII, BMGI may reassert its standing argument.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part BMGI's motion to dismiss [26]. The Court dismisses Novak's unjust enrichment claim (Counts III) without prejudice. Although Novak cannot pursue his declaratory judgment claim (Count VI) as a standalone claim, the Court allows him to pursue the relief included therein.

Dated: October 22, 2026

SARA L. ELLIS
United States District Judge